■ In the Matter of the Claim of MARY McCARTHY, Respondent, v. ALLING PERSONNEL CORP. et al., Appellants, and UNINSURED EMPLOYERS' FUND, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and its insurance carrier from a decision of the Workmen's Compensation Board holding that Alling Personnel Corp., with which organization decedent was an employee, was covered by a compensation policy issued by the appellant carrier. Alling Personnel Service, a partnership in which decedent was one of the two partners, was issued a workmen's compensation policy by

the appellant carrier. Under this policy decedent, as a partner, was not and could not be covered; only the secretary in the office of the partnership was covered and premiums were computed by the carrier on her salary alone. In April, 1963 the business incorporated and became Alling Personnel Corporation. At this time, of course, the corporation became the employer and the decedent as president of the corporation became an employee subject to coverage. Nevertheless, when the policy was renewed for three years in 1965 it was renewed in the partnership's name and premiums still computed solely on the basis of the secretary as the sole employee. The carrier asserts and the record shows that it was not until August 10, 1971, after decedent's fatal accident, that it was first informed that Alling Personnel Corporation even existed. The board, however, found that the issued policy covered Alling Personnel Corporation. In its decision of August 12, 1970 the board stated that the name on the policy " is not important if the intent to cover the risk is clear " and noted that " corporate checks were issued for payment of premiums and that the carrier accepted same ". In a supplemental decision dated April 27, 1971 the board advanced as a further ground for finding coverage that the carrier's failure, " for its own economy, to audit the books of the insured " prevented it from denying coverage under the doctrine of equitable estoppel. It is apparent that the board nearly a year after the original decision came to the conclusion that its position of " clear " intent to cover was untenable. In our opinion the evidence in the instant record does not support the board's findings. Clearly a mere mistake as to the name of the insured would not preclude coverage if the intent to cover the risk was clear (e.g., *Matter of Cohen* v. *Buccheri,* 251 App. Div. 765). But that is obviously not the case here. The carrier's risk on the policy issued to the partnership was different than that involved once the business incorporated. It cannot be said automatically that the carrier intended to be liable for coverage of the entire business operation no matter what form it took in view of the greater coverage required when the corporate form was adopted. It is interesting to note that there is not even a claim that the carrier was notified of the change until August of 1971 and for four years the premium of $19.10 only was paid by the employer. There is testimony in the record that the carrier's local agent never saw these checks which were processed by his agency on a local basis. The issuance of a disability benefits policy *to the partnership* provides no clue to a change because the disability benefits policy can be issued covering partners as well as employees. Something more must thus be present to effect such a contractual reformation. And the acceptance by the carrier's agency of corporate checks in payment for the premiums cannot alone form the basis of notice to the carrier that it is dealing with a different form of business entity and thus effect a reformation of the insurance contract. *Matter of Engler* v. *Regent Bindery* (272 App. Div. 843, mot. for lv. to app. den. 297 N.Y. 1034) does not compel a different result. As this court pointed out, the immediate risk involved was not affected by the result reached in that case. Moreover, in addition to the carrier's acceptance of corporate checks, the record reveals that the carrier was allegedly informed by telephone of the change from partnership to corporate status. Nor is the doctrine of equitable estoppel available to preclude the carrier from denying coverage because an audit would have revealed the corporate form (*Matter of Blythe* v. *Cochran,* 19 A D 2d 934, mot. for lv. to app. den. 13 N Y 2d 601). As pointed out in *Blythe,* " We do not agree with the other basis of the decision that a mere failure to audit works an estoppel to deny what an audit, if made, would have shown. This concept does violence to the usual conditions underlying the

rule of estoppel." Decision reversed, and matter remitted to the Workmen's Compensation Board for further proceedings not inconsistent herewith, with costs to appellants against the Uninsured Employers' Fund. Greenblott, Kane and Reynolds, JJ., concur; Herlihy, P. J., and Cooke, J., dissent and vote to affirm in the following memorandum by Herlihy, P. J.: The board found: " On review and based on the evidence * * * that the Alling Personnel Corporation took over all operations of the Alling Personnel Service in April, 1963; that corporate checks were issued for payment of premiums and that the carrier accepted same; that the name of the insured listed on the policy is not important if the intent to cover the risk is clear; that the Reliance Insurance Company was the carrier for the Alling Personnel Corp.; that it covered all employees and that the decedent was covered, as an employee of the corporation." As noted by the majority, the additional findings by the board on April 21, 1971 that there was an estoppel as to the denial of coverage by the carrier is not supported by substantial evidence. However, the above-quoted findings by the board are supported by such evidence as was adduced in this record and the reasonable inferences therefrom. The coverage of the business with which we are concerned relates to a policy of insurance issued by the appellant insurance carrier for the period of April 23, 1965 to April 23, 1968. This policy was introduced in evidence and is a part of the record before the court. The name of the insured is " Alling Personnel Service". It was not issued in the name of the partners doing business as Alling Personnel Service or is there anything upon the policy to indicate that the status of the entity securing the policy was of any concern. Indeed, the policy contains four categories preceded by blocks, one of which should have been checked or amplified to show the nature of the insured's ownership, one of these categories being specifically " partnership" and none of such blocks were checked. The intent of the carrier to specifically insure a partnership is dubious upon the face of the policy and, indeed, the face of the policy is entirely consistent with the board's finding that there was an intent solely to cover the risk inherent in the business. The majority assert that premiums were computed solely on the basis of one employee, however, the policy upon its face refers to " employees" and both the policy and the testimony indicate that the remuneration upon which actual premiums were to be computed was to be determined by audits after the policy was issued. The findings of the board being supported by substantial evidence in the record and being in conformity with the reasonable inferences flowing therefrom, the decision should be affirmed. (See Matter of Engler v. Regent Bindery, 272 App. Div. 843, mot. for lv. to app. den. 297 N.Y. 1034; Matter of Lipschitz v. Hotel Charles, 226 App. Div. 839, 840, affd. 252 N.Y. 518.)